[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13041

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SEAN BOTTORFF,
a.k.a. Sean McFarland,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00020-TFM-N-3

_____

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Sean Bottorff appeals his 180-month prison sentence—an upward variance of nearly three times the high end of his guideline range of 60 to 63 months' imprisonment—for conspiracy to maliciously destroy by fire.  On appeal, Bottorff argues that the district court abused its discretion and imposed a substantively unreasonable sentence because it imposed a major upward variance and based its sentence on the severity of the offense and did not properly consider relevant mitigating sentencing factors. We disagree and affirm.

The facts are known to the parties, and we repeat them here only as necessary to decide the case.

When reviewing for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

Under § 3553(a), a district court's sentence must be sufficient, but not greater than necessary, to achieve the goals of sentencing: reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public.  18 U.S.C. § 3553(a).  Section 3553(a) also requires district courts to consider the nature and circumstances of the offense, the defendant's history and

characteristics, the kinds of sentences available, the Sentencing Guidelines, any pertinent public policy statement, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and the need to provide restitution to any victims. *Id.*

We have "underscored" that we must give "due deference" to the district court to consider and weigh the proper sentencing factors. *United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (citation and quotation marks omitted). The district court doesn't have to give all the factors equal weight and is given discretion to attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). However, a district court's unjustified reliance on any one § 3553(a) factor may be indicative of an unreasonable sentence. *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008). We will vacate a defendant's sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) (citation and quotation marks omitted).

A district court abuses its discretion and imposes a substantively unreasonable sentence only if it (1) fails to consider relevant factors that were due significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) commits a clear error of judgment in considering the proper

factors. *Rosales-Bruno*, 789 F.3d at 1256. "[A] district court commits a clear error of judgment when it considers the proper factors but balances them unreasonably," arriving at a sentence that does not "achieve the purposes of sentencing as stated in § 3553(a)." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*) (quotation marks omitted). To determine whether that has occurred, we are required to make the sentencing calculus ourselves and to review each step the district court took in making it. *Id.* Under abuse-of-discretion review, we will sometimes affirm the district court's sentence even though we would have gone the other way. *Id.*

The district court is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or discuss each of them. *United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013). An acknowledgment by the district court that it has considered the § 3553(a) factors is sufficient. *United States v. Turner*, 474 F.3d 1265, 1281 (11th Cir. 2007). Additionally, we "have taken a holistic approach in evaluating the district court's explanation of the sentence imposed" such that "[o]ur review is not limited to the district court's closing remarks." *United States v. Ghertler*, 605 F.3d 1256, 1263 (11th Cir. 2010). "Although there is no proportionality principle in sentencing, a major variance does require a more significant justification than a minor one—the requirement is that the justification be sufficiently compelling to support the degree of the variance." *Irey*, 612 F.3d at 1196 (citation and quotation marks omitted) (listing examples of a major variance in a sentence including decreases of more than one-third).

23-13041          Opinion of the Court          5

The district court is free to consider any information relevant to a defendant's background, character, and conduct in imposing an upward variance. *United States v. Tome*, 611 F.3d 1371, 1379 (11th Cir. 2010). Additionally, the district court may rely on factors in imposing a variance that it already considered in calculating the defendant's guideline range. *See United States v. Amedeo*, 487 F.3d 823, 833–34 (11th Cir. 2007). We do "not presume that a sentence outside the guideline range is unreasonable and must give due deference to the district court's decision that the § 3553(a) factors, as a whole, justify the extent of the variance." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020). One indicator of reasonableness is whether the sentence falls well below the maximum penalty. *See United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

Here, while a close call given the extent of the upward variance from the guideline range of 60 to 63 months, Bottorff's 180-month sentence was not an abuse of the district court's broad discretion, and thus, is not substantively unreasonable. *See Gall*, 552 U.S. at 51. The upward variance constituted a sentence nearly three times the high end of his guideline range of 60 to 63 months. *See Irey*, 612 F.3d at 1196.[1] As such, the district court was required to identify factors sufficiently compelling to justify such a degree of

---

[1] Even with the significant upward variance, the district court's 15-year sentence was well below the statutory maximum of 20 years. *See* 18 U.S.C. § 844(i). That fact indicates that the sentence is reasonable. *Dougherty*, 754 F.3d at 1364.

variance. *See id.* Here, the district court cited several § 3553(a) factors in explaining its sentence, even if those factors were not the ones Bottorff argued should be given the most weight, like the testimony from his expert witness, Dr. Lalich, and Scheele's testimony about his demeanor. In its statement of reasons, the district court explained that the guideline range was not reasonable based on the facts and circumstances of the case, specifically stating that the Guidelines did not adequately account for "this series of crimes." Though the court did not explicitly address all the § 3553(a) factors, it did identify the seriousness of the offense and the need for deterrence, incapacitation, and just punishment as factors meriting an upward variance from the Guidelines. The district court noted that the four fires that Bottorff and his codefendants participated in created a great risk of loss of life and property and showed a callous disregard for the safety of innocent people. The district court further noted the risk to human life, the financial loss of $7 million, and the political motivation behind the fires as aggravating factors.

The district court was not required to explicitly address all the § 3553(a) factors and did make findings relevant to the nature and circumstances of the offense and Bottorff's personal history, the very factors that Bottorff now argues the district court overlooked by arguing that the court rejected the fact that he was in a cult run by Sikes and Dr. Lalich's testimony regarding his mental state. *See Kuhlman*, 711 F.3d at 1326. First, the district court heard testimony from Dr. Lalich regarding her opinion that Sikes ran a cult and the impact that the cult had on Bottorff's mental

23-13041                Opinion of the Court                7

state. Moreover, the court expressly stated that it considered the testimony from Dr. Lalich but ultimately concluded differently. Likewise, the court considered Scheele's testimony but did not credit it to the extent that she described Bottorff as "clueless." Sentencing Transcript at 37. To the extent that Bottorff argues that the court failed to consider his mental state, the court considered the evidence presented at the evidentiary hearing and sentencing, and his allocution requesting consideration of his emotional and mental state, before ultimately denying his motion for a downward departure. The court was not required to give each factor equal weight, and it had the discretion to attach great weight to one factor over another. We cannot say that the court unjustifiably relied on a single § 3553(a) factor or failed to give adequate weight to the factors Bottorff identified as relevant. *Rosales-Bruno*, 789 F.3d at 1254; *Pugh*, 515 F.3d at 1191.

As to Bottorff's argument that the disparity between his and Sikes's sentences did not reflect the difference in their relative culpability, the district court did consider that Sikes was the most culpable person in the conspiracy and should be treated as such. The record also indicates that the district court did consider the mitigating factors argued by Bottorff but weighed them against the previously described aggravating factors, noting that, ultimately, Bottorff voluntarily chose to join the conspiracy, he was aware that Sikes was running from the law, his choices and conduct were his own, and he knew what he was doing. While Bottorff argues that he was merely a follower and had no prior criminal history, the court had broad discretion to determine how to weigh these

factors, *Tome*, 611 F.3d at 1379; *see also Rosales-Bruno*, 789 F.3d at 1254.  Though Bottorff may disagree with the weight that the district court ascribed the various factors and its explanation of reasons, the district court had the discretion to weigh the factors as it deemed appropriate and heard the argument that Bottorff had no prior criminal history.  *See Rosales-Bruno*, 789 F.3d at 1254.

Finally, the requirement that courts must provide a more thorough justification for larger variances than for minor ones. *Gall*, 552 U.S. at 50.  Here, Bottorff's sentence of 180 months' imprisonment constituted an upward variance of 117 months, or roughly three times the high end of his guideline range of 63 months, and thus required a thorough explanation justifying its extent.  Bottorff argues that the district court's cited reasons were inadequate to triple his sentence while only doubling Sikes's, but the court identified several salient factors regarding the serious offense not contemplated by the Guidelines, such as the significant amount of property damage caused, the number of fires, the risk to human life, the political agenda motivating the fires, and the aborted attempted robbery with a bomb.

The district court did not abuse its discretion in imposing a 180-month sentence, as it was substantively reasonable.  The court identified numerous grounds for varying from the Guidelines. Furthermore, the district court had broad discretion in weighing the various § 3553(a) factors and didn't abuse its discretion in giving greater weight to the aggravating factors than Bottorff's mitigating evidence.  Accordingly, we affirm.

23-13041                Opinion of the Court                9

**AFFIRMED.**